## * * § 362 INFORMATION COVER SHEET * *

_____           _____              _____

DEBTOR                                      Case No:                  MOTION #:

_____           CHAPTER:

MOVANT

---

**_Certification of Attempt to Resolve the Matter Without Court Action:_**

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* _____        *Signature:* _____

                                                            *Attorney for Movant*

---

PROPERTY INVOLVED IN THIS MOTION:_____

NOTICE SERVED ON:  Debtor(s)_____; Debtor's counsel_____; Trustee_____;

DATE OF SERVICE:_____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st | 1st |
| 2nd | 2nd |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: | Total Encumbrances: |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION"for MOVANT . |
|---|---|
| Amount of Note: | . |
| Interest Rate: | . |
| Duration: | . |
| Payment per Month: | . |
| Date of Default: | . |
| Amount in Arrears: | . |
| Date of Notice of Default: | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: | SUBMITTED BY: |
| | SIGNATURE: |

1

ADAM P. MCMILLEN, ESQ.
Nevada Bar No.: 10678

2

WATSON ROUNDS,
A Professional Corporation

3

5371 Kietzke Lane
Reno, Nevada 89511

4

Telephone: (775) 324-4100
Facsimile: (775) 333-8171

5

Attorneys for TIMM PEDDIE

6

7

**IN THE UNITED STATES BANKRUPTCY COURT**

8

**FOR THE DISTRICT OF NEVADA**

9

10

In re:                                              Case No. BK-13-51731-BTB

11

SPOT HOLDINGS, INC.,                (Chapter 7)

12

            Debtor.                        **MOTION FOR RELIEF FROM**

13

                                                  **AUTOMATIC STAY**

14

                                                  **Hearing Date:   March 25, 2014**

15

                                                  **Hearing Time:   10:00 a.m.**

16

17

        Timm Peddie ("Peddie") files this motion for relief from the automatic stay pursuant to

18

to 11 U.S.C. § 362(d)(1).  In support of this motion, Peddie respectfully states as follows:

19

**BACKGROUND**

20

        Although the history underlying this motion is complex, the relief that it seeks and the

21

logic that drives it are not.  Peddie was the CEO and founder of Spot Holdings, Inc., formerly

22

known as Spot Devices, Inc. ("Spot"), from 2002 to 2004.  Peddie was a member of the board of

23

directors of Spot from 2002 to 2012.  Peddie originally owned 100% of Spot's stock.  When

24

Haws Corporation ("Haws") became an investor in Spot, Peddie's stock holdings went to 28%.

25

26

Immediately before an improper 2011 revaluation of Spot, Mr. Peddie held 17% of Spot's stock.

27

After the revaluation, Mr. Peddie held about 1.8% of the stock.

28

        During Peddie's tenure on the board, Haws, acting with and as the alter ego of Spot,

repeatedly obstructed Peddie's ability to obtain proper financial and business details and repeatedly failed to respond to requests for data. In 2011, Haws/Spot used a "third-party" to improperly value Spot, which alleged valuation was based upon an asset valuation of $1MM, and Haws/Spot never shared the details of the valuation with the Spot board and failed to respond to multiple board requests for a more suitable valuation based upon cash flows (VC method or FCF methodologies). Based upon valuations using Harvard case-study processes for valuation (NPV, APV, VC) and based upon Spot's 2010 financials and proforma (showing $6.5MM revenue planned for 2011, and $9.4MM for 2012), Spot should have been valued at closer to $25MM.

Haws directly controlled and wrongfully manipulated the revaluation of Spot in order to protect its own interests in Spot while at the same time sacrificing the interests of Peddie. Haws manipulated the 2011 board vote for revaluation by stating that they were going to fire Thomas Burnham and Chris Peddie, Spot officers, if they did not support the $1MM valuation and subsequent debt-equity conversion of Haws' $6.7MM debt. Haws' involvement in Spot's affairs was sullied by conflicts of interest as well. For example, John Pettibone, Haws' CFO, participated in all the Spot board meetings and actively managed Spot's financial behavior on a day to day basis with a focus on Haws' best interests, not Spots or its shareholders' best interests.

Mr. Pettibone recently testified in this matter that he currently is the CFO of Spot and has been the CFO of Spot since 2005. *See* Declaration of Adam McMillen, dated 1/24/14 ("McMillen Dec."), Exhibit 1, Transcript of Meeting of Creditors, 5:5-8, 9/26/13. Mr. Pettibone also testified that he currently is and has been the CFO of Haws for at least the same amount of time. *Id.* at 6:14-21.

Mr. Pettibone testified that Tim Henderson, the controller for Haws, "performs the finance function" of Spot. *Id.* at 6:24-7:5. In fact, Mr. Pettibone testified that "[t]he finance function for Spot Holdings, previously known as Spot Devices, is performed by Haws." *Id.* at 7:7-8 (emphasis added). "Spot does not have its own accounting function. Haws performs it as

a free service." *Id.* at 7:10-11. "The whole Haws finance department performs that service." *Id.* at 7:13-14. "The finance function is performed by Haws." *Id.* at 16:21. Mr. Pettibone testified there "never has been" anyone at Spot to process payments, as Haws has always done that for Spot. *Id.* at 16:18-17:10 ("To reiterate what I said at the outset, the finance function is performed by Haws, so all the accountants that exist that do the collection of receivables and payments of payables are Haws people.").

In addition, Mr. Pettibone testified that earlier this year, Haws received about $1.5 million in intellectual property rights from Spot in return for "forgiveness" of "debt." *Id.* at 19:9-20:11. However, Mr. Pettibone could not quite recall what debt or note was actually forgiven. *Id.* This is just one example of how Spot is the alter ego of Haws.

Haws, through John Pettibone, appointed Dean McKay to the Spot board (Mr. McKay served as chairman of the Spot board) without shareholder vote or meeting. Haws also appointed Mr. McKay as CEO of Spot without a Spot board meeting or notification (Mr. McKay also serves as a member of the Haws Board of Directors). While Haws initially retained Mr. McKay to serve as a consultant to assist with the Spot situation, once Peddie asked if Mr. McKay was on the board and if he was Spot's CEO, Haws simply said, "yes," to which Peddie asked for meeting minutes and correspondence of notifications and Mr. Pettibone responded by simply stating that it was done and he would send Peddie the meeting notes. Mr. Pettibone never sent the meeting notes, likely because they do not exist.

Also in 2011, Haws, in miraculous fashion, converted $6.7MM in debt to Spot equity and then sold "selected assets" of Spot to Carmanah Technologies with a license from Cirrus Systems, LLC (an entity also owned and managed by Haws), for the SIMA software platform, firmware license, trademark and appointment of the software. Then again at the end of 2012, despite claiming profitability in the first quarter of 2011, Haws laid claim to another $4.6MM in debt, without providing the financials to document when or how this came about, and Haws also

laid claim to SIMA and Spot assets and then essentially turned Spot into Cirrus Systems, LLC with no share conversion or compensation to the Spot shareholders.

On May 29, 2013, pursuant to NRS 92A.320 and NRS 92A.460, Peddie demanded that Haws/Spot pay Peddie the amount Haws/Spot estimated to be the fair value of Peddie's shares, plus accrued interest, before the revaluation of Spot.  On June 14, 2013, Spot provided a nuisance value confidential settlement proposal to Peddie for all parties involved, including Haws/Spot, and stated that it was a last and best offer.  On June 18, 2013, Peddie provided a counteroffer.

Later in June, 2013, counsel for Haws/Spot extended the nuisance value settlement offer and threatened that if Peddie did not accept the nuisance settlement offer that Spot would be put into bankruptcy before litigating the issue with Peddie.  Since Haws/Spot were unwilling to give Peddie fair value for his shares, on July 2, 2013, Peddie filed a state court action against Spot, Haws, Spot Investments, LLC (another entity owned and managed by Haws), and John Pettibone.  *See* McMillen Dec., Exhibit 2.  On August 1, 2013, Haws/Spot sought and were granted an extension of time "to respond" to Peddie's complaint.

On August 29, 2013, Spot filed this bankruptcy case under Chapter 7 of the Bankruptcy Code.  A day later, on August 30, 2013, Haws and Mr. Pettibone filed a motion to stay the proceedings of Peddie's state court action based upon Spot's bankruptcy action, to which Spot joined.  Also on August 30, 2013, Spot and Spot Investments, LLC filed a notice of Spot's Chapter 7 bankruptcy in Peddie's state court action.

On November 25, 2013, the state court issued an order addressing Haws'/Spot's motion to stay the state court action.  *See* Exhibit 3.  The state court found that certain causes of action belong to Spot and are therefore subject to the automatic stay.  *Id.* at 4:16-6:4 ("Because the injuries alleged are to Spot and common shareholders, generally, and the damage to Mr. Peddie only results therefrom, these causes of action belong to Spot.").  However, the state court found

1    that the claims for declaratory relief and permanent injunction are not stayed because they do not

2    belong to the trustee and, as pursued against the non-debtor defendants as alter egos of Spot, do

3    not seek to control property of the debtor.  *Id.* at 6:5-8:15.

4        On January 3, 2014, Haws and Mr. Pettibone answered the complaint in the state court

5    action.  Spot Investments, LLC has failed to answer the complaint at this time.

6        Attempting to resolve Peddie's claims of breach of fiduciary duty, aiding and abetting

7    breach of fiduciary duty, constructive fraud, interference with prospective economic advantage,

8    and unjust enrichment, in any forum other than the Nevada state court would involve a massive

9    duplication of effort that would needlessly deplete the debtor's limited resources and impose

10   unnecessary costs on Peddie.  Consequently, Peddie seeks relief from the automatic stay in order

11   to resolve his claims in the appropriate forum, and bring this Chapter 7 case to a quick

12   conclusion.

13

14                                **RELIEF REQUESTED**

15       Peddie requests entry of an order, pursuant to section 362(d)(1), Bankruptcy Rule 4001

16   and Local Rule 4001(a) granting: (i) relief from the automatic stay to allow the Nevada state

17   court action to proceed; and (ii) such other relief as is just and proper.

18

19                                **BASIS FOR RELIEF**

20       Good cause exists to grant Peddie relief from the automatic stay to continue the Nevada

21   state court action and to liquidate his claim for damages.  Pursuant to section 363(d)(1) of the

22   Bankruptcy Code, upon the request of a party in interest, relief from the automatic stay must be

23   granted if "cause" exists.  *See* 11 U.S.C. § 362(d)(1).  While the moving party has the initial

24   burden of establishing a *prima facie* case that "cause" exists, upon establishing its *prima facie*

25   case, the burden of persuasion shifts to the debtor to demonstrate why relief from the stay should

26   not be granted.  *Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex)*, 311 B.R.

27   551, 558 (Bankr. C.D. Cal. 2004).

28

Although "cause" is not defined by the Bankruptcy Code, in circumstances where a party has sought relief from stay to pursue its claims against the debtor in a non-bankruptcy forum, Congress has stated that "a desire to permit an action to proceed to completion in another tribunal may provide another cause." House Report No. 95-595, 95th Cong., 1st Sess. 343-4 (1977). In deciding whether "cause" exists, bankruptcy courts have "discretion in determining whether cause exists to modify the stay." *In re Edmondson v. America West Airlines, Inc. (In re America West Airlines)*, (*citing MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715 (9th Cir. 1985)).

Ninth Circuit jurisdictions have also adopted the *Curtis/Sonnax* factors for determining when such cause exists. *See In re Smith*, 389 B.R. 902, 918-19 (Bankr. D. Nev. 2008) (*citing In re Curtis*. 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) and *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1285 (2d Cir. 1990)); *In re Plumberex*, 311 B.R. at 559 (same). In particular, twelve nonexclusive issues should be considered when deciding whether to grant relief from the automatic stay to permit pending litigation to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial Hen avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Sonnax*, 907 F.2d at 1286 (citing *Curtis* 40 B.R. at 799-800).

In deciding whether cause exists, this Court need consider only the relevant factors and may give different weight to each factor as it deems appropriate. *See in re Smith,* 389 B.R. at 919. In this case, the following relevant factors overwhelmingly demonstrate that relief from the

-6-

stay is appropriate.

### i. Granting Relief from the Stay Would Resolve the Non-Bankruptcy Issues

Granting stay relief would permit a resolution of the non-bankruptcy issues and liquidation of Peddie's claims, as this Court retains exclusive jurisdiction over the nondischargeability claim for relief. *See Sasson v. Sokoloff (In re Sasson),* 424 F.3d 864, 869-70 (9th Cir.2005), *cert, denied,* 547 U.S. 1206, 126 S.Ct. 2890, 165 L.Ed.2d 917 (2006).

### ii. Whether the Issues are Solely State Law Actions or Whether a Special Tribunal Should Use its Expertise to Hear the Issues

No issues that need to be resolved in the state court action require the expertise of a special tribunal, *i.e.*, a bankruptcy court. The issues being litigated in the Nevada state court are limited to garden variety state law causes of action, including breach of fiduciary duty and constructive fraud, and state law remedies. *See* McMillen Dec., Exhibit 2. Indeed, as recognized in *America West*, it is more appropriate to have the non-bankruptcy court decide the non-bankruptcy issues, such as whether a claim exists and the damages thereupon, and thereafter have the bankruptcy court decide any bankruptcy issues. 148 B.R. at 924-25. Accordingly, this Court should permit the state court to hear and resolve the purely non-bankruptcy issues posed by Peddie's state claims before this Court evaluates the bankruptcy issues.

### iii. Whether Insurance is Available to Defend Spot or Whether the Defense of the Suit Will Impose a Financial Burden on the Estate

Peddie is unaware if Spot has insurance to cover expenses involved with the state court action. However, the state court action involves state claims and the claims against Haws and Mr. Pettibone will go forward in the state court action. *See* McMillen Dec., Exhibit 3. Duplicating the state court action in this Court will only increase the costs of litigation for all parties and the Court. Therefore, any expenses litigating in the state court would be minimal and not create a financial burden for either party compared to duplicating the effort in this Court.

///

### iv. Whether Litigation Involves Other Parties in Which the Bankruptcy Court Lacks Jurisdiction

The state court action is against multiple defendants in addition to Spot, including, but not limited to: 1) Haws Corporation; 2) John Pettibone; and 3) Spot Investments, LLC. However, the state court is only allowing Peddie to continue against Haws and Mr. Pettibone on two out of his seven claims for relief. *See* McMillen Dec., Exhibit 3. The state court has stayed the other causes of action as the state court believes they belong to Spot. Also, Spot Investments, LLC is currently arguing before the state court that the state court action is also completely stayed as to Spot Investments, LLC, an entirely separate entity from Spot Holdings, Inc. *See* McMillen Dec., Exhibit 4. Moreover, Peddie claims Haws, Mr. Pettibone, Spot Investments, LLC, are the alter ego of Spot.

Therefore, the state court action involves other parties in which this Court lacks jurisdiction and lifting the stay in this matter to allow the state court action to proceed will not prejudice any party or creditor.

### v. The Parties are Prepared to Proceed in the Nevada Action

The automatic stay should be lifted because Spot commenced this Chapter 7 case immediately after the state court action was filed with the sole objective of derailing the state court litigation. The automatic stay may be lifted if pre-petition litigation was disrupted by a bankruptcy filing. *See In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 557 (Bankr. CD. Cal. 2004) (citing H.R.Rep. No. 95-595, at 341 (1977); S.Rep. No. 95-989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836) ("[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.").

As stated by the Ninth Circuit Court of Appeals, "[w]here a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause

may exist for lifting the stay as to the state court trial." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990); *see also Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802, 807 (9th Cir. 1985) (affirming an order lifting the stay to permit a creditor to pursue a conversion and fraudulent conveyance action pending in the federal district court following a remand of the case by the appellate court for a retrial on the damages issue).

Relief from the automatic stay is appropriate where a bankruptcy petition is filed shortly after a state court action is filed. Such relief is especially appropriate where, as here, a bankruptcy petition is being used as a litigation tactic intended to "unreasonably deter and harass creditors" rather than to effect a feasible reorganization. *See In re Plumberex*, 311 B.R. at 560 (citations omitted).

In this case, cause exists to lift the automatic stay because Spot filed for Chapter 7 protection on August 29, 2013, a mere twenty-eight days after requesting and receiving an extension to respond to the July 2, 2013 state court action. While the Nevada state court action was not on the eve of trial when the bankruptcy petition was filed, the Nevada state court has overseen Haws'/Spot's motion to stay and thereby invested substantial time in developing an understanding of the facts and applicable state law. The Nevada state court has also determined that Peddie may move forward on his claims against Haws and Mr. Pettibone. *See* McMillen Decl., Exhibit 3.

**vi. Lifting the Stay Will Promote Judicial Economy**

If the stay is not lifted to allow the Nevada state court action to proceed against Spot, Peddie will be required to commence an adversary proceeding before this Court in order to have its rights adjudicated. Such an adversary proceeding would require an immense duplication of effort in the state court action and result in Spot's estate incurring significant and unnecessary expenses. In contrast, if the state court action is permitted to go forward with Spot, there will be

-9-

1

no duplication of effort.

2

Peddie expects Spot to complain that it lacks the resources to pursue the state court

3

action. However, it is presumed that Haws is funding Spot's activities, and Spot cannot escape

4

the fact that this matter cannot meaningfully proceed absent a resolution of the issues in the state

5

court action. Accordingly, resolution of the state court action is a necessary precondition to any

6

resolution of this bankruptcy matter.

7

Given that Peddie's claims against Spot must be resolved before this matter can proceed,

8

judicial economy suggests that, rather than have Peddie's claims duplicated before this Court, the

9

automatic stay should be lifted to allow the state court action to proceed as economically and

10

11

expeditiously as possible.

12

**vii. Lifting the Automatic Stay Will Not Interfere with this Chapter 7 Case**

13

By allowing Peddie to liquidate his claims and then requiring Peddie to ultimately seek

14

implementing relief from this Court, lifting the automatic stay will further, rather than interfere

15

with this Chapter 7 case. *See e.g., In re G.S. Distribution, Inc.*, 331 B.R. 552, 567 (S.D.N.Y.

16

2005) (granting stay relief to permit liquidation of claims and counterclaims in pre-petition

17

litigation where the bankruptcy court retained authority to issue any implementing relief).

18

19

"The automatic stay was never intended to preclude a determination of … liability and

20

the attendant damages. It was merely intended to prevent a prejudicial dissipation of a debtor's

21

assets." *In re Bock Laundry Mach. Co.*, 37 B.R. 564 (N.D. Ohio 1984) (citation omitted). "A

22

lifting of the stay to allow a plaintiff-creditor to determine liability will not affect the estate. It

23

will only allow [Peddie] to establish the amount of a claim which already has been made

24

against the estate. In this respect, a relief from the stay will not violate the purpose for which it

25

was imposed." *Id.*; *see also In re Tucson Estates, Inc.*, 912 F. 2d 1162, 1167 (9th Cir. 1990)

26

("section 1334 supports the duality of allowing a claim to be adjudicated to final judgment in

27

28

state court while preserving the issues of the status and enforceability of the claim to

the bankruptcy court.")   (*citing In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 427

(Bankr.S.D.Tex.1987); *In re Comer*, 723 F.2d 737, 740 (9th Cir.1984) (distinguishing between

extent of debt, for which state court decision was *res judicata*, and nature of debt, the crucial

issue in dischargeability for which a state court decision would not be *res judicata* in

a bankruptcy court); *In re Ozai*, 34 B.R. 764, 766 (Bankr.9th Cir.1983) (existence of debt and

dischargeability of debt are separate issues)).

     "Numerous courts have permitted the stay to be lifted when the movant is simply

seeking to establish the fact and amount of the debtor's liability and, as in this case, the movant

has stipulated that any recovery will be sought from the debtor's insurer or a codefendant." *In

re Peterson*, 116 B.R. 247 (D. Colo. 1990) (*citing May v. Wheeler Group, Inc. (In re Wheeler

Group, Inc.),* 75 B.R. 200, 200 (S.D. Ohio 1987) (most expeditious way to liquidate claim was

to permit foreign action to proceed to conclusion); *Elegant Concepts, Ltd. v. Kristiansen (In re

Elegant Concepts, Ltd.),* 61 B.R. 723, 729 (Bankr.E.D.N.Y.1986); *In re Nkongho,* 59 B.R. at 86

(risk that state judgment may exceed insurance coverage insufficient to justify stay)).

     *In re Bock Laundry* makes the following salient point about how bankruptcy courts

have balanced the interests of the parties when deciding to lift the stay:

> In prior decisions, the Courts have considered a variety of factors which affect the
> balancing of the interests. Of predominant importance in these decisions have
> been the hardships to the plaintiff of protracted litigation and the expense of time
> and money to the Debtor-In-Possession in defending these actions. A number of
> Courts have attributed a considerable weight to the fact that a plaintiff, by having
> to wait, may effectively be denied an opportunity to litigate. The aging of
> evidence, loss of witnesses, and crowded court dockets are factors which
> contribute to these hardships. The opinions reflect that the Courts have regarded
> the opportunity to litigate the issue of liability as a significant right which cannot
> be easily set aside, despite the existence of a bankruptcy proceeding.

*In re Bock Laundry Mach. Co.*, 37 B.R. at 566 (citations omitted); *see also In re Santa Clara

County Fair Ass'n, Inc.*, 180 B.R. 564 (1995) (noting argument that plaintiffs are prejudiced by

delay in manner that all plaintiffs are prejudiced by failing memories and the like).

     In drafting 11 U.S.C. § 362(d), a statute under which the stay may be lifted, Congress

-11-

1
2
3
4
5

stated: "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *In re Santa Clara County Fair Ass'n, Inc.*, 180 B.R. at 566 (*citing* S.Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836).

6
7
8
9
10
11
12
13

In this case, many factors weigh in favor of relief from the stay, including the fact that insurance and the other defendants may be available to cover Peddie's claims against Spot,[1] judicial economy favors having the action proceed in state court, no burden will be placed on the estate, defense of this suit will not affect Spot's ability to liquidate its claims, Peddie will incur a greater hardship if the stay is not modified, and Spot will incur minimal harm, if any. Additionally, Peddie only seeks to establish liability and to liquidate damages and will not commence collection efforts without bankruptcy court authority.

14
15
16
17
18
19
20

Spot "must recognize that the Bankruptcy Code does not provide unlimited protection for a Debtor." *In re America West Airlines*, 148 B.R. 920, 923 (Bankr. D. Ariz. 1993) (*citing In re Johnson,* 115 B.R. 634, 636 (Bankr.D.Minn.1989) (*citing In re Bock Laundry Machine Co.,* 37 B.R. at 567) ("[t]he mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, their [sic] opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount.")).

21
22
23
24
25

It is more appropriate for the state court to first determine the non-bankruptcy issues, i.e., whether a claim exists and the damages therein if any. *See In re America West Airlines*, 148 B.R. at 924-5 (finding same). "After such a determination, then the bankruptcy issues become relevant." *Id.* at 925.

26

Therefore, good cause exists to modify the stay for Peddie to proceed in the state court

27
28

1 Haws'/Spot's counsel refuse to answer questions whether or not Haws is covering all of Spot's legal fees in this matter and refuse to answer whether or not Spot is covered by insurance or any indemnity agreements. *See*

-12-

against all defendants in that action.  Peddie will request permission to file a proof of claim in the bankruptcy court in the event a judgment is rendered in Peddie's favor in the state court action.  "Rule 3002(c)(3) allows for such filing within 30 days of the judgment becoming final if the judgment is for the recovery of money or property from the entity." *Id.* at 925.

Accordingly, allowing the state court action to proceed will move this Chapter 7 case forward without saddling this Court with the burden of additional litigation or undercutting this Court's authority.

### viii.    The Nevada State Court has Already Developed an Understanding Concerning the State Court Action

The state court action primarily concerns Nevada state law.  As a result of its frequent experience with such matters, the Nevada state court has developed a familiarity with the legal and factual bases of the Nevada state court action.  Litigating before this Court would involve an immense duplication of effort that is inadvisable in light of the Debtor's apparent diminishing resources.

### ix.  Litigating: Outside of this Court Will Not Prejudice Any Party

In analyzing the prejudice caused to a debtor in defending a suit in a non-bankruptcy forum, the *America West* court focused on the monetary cost to the debtor of defending such a suit.  148 B.R. at 923 ("The Court finds and concludes . . . that the funds necessary to defend the action in Nevada will not place a great burden on the estate at this stage of the reorganization.").  Unlike this case where Spot filed for bankruptcy protection soon after the state action was filed, in *America West*, the suit at issue had not yet been filed.

Allowing the state court action to be adjudicated by the state court will benefit, rather than prejudice, other creditors and interested parties by avoiding unnecessary costs to the Spot's estate.  The issues raised in the state court action must be resolved before a meaningful

McMillen Dec., Exhibit 5.

resolution of this matter.  Thus, lifting the stay to allow the state court action to proceed is the fastest and most cost-effective way to move both of these cases forward.  Moreover, parties in interest will have the opportunity to object if and when Peddie prevails in the state court action and seeks an order from this Court implementing the state court's ruling.  Accordingly, allowing the state court action to move forward will benefit other creditors and the Debtor's estate by preserving estate assets while preserving all parties' rights in this Chapter 7 case and where the litigation of Peddie's claims is an unavoidable fact and contemplated by Spot, there is no prejudice Spot will suffer if the relief requested in this Motion is granted.

### x.  The Balance of Harms Favors Granting Relief from the Stay

In balancing the hardships, the *America West* court focused on "the consequences of Movant's inability to bring the action versus Debtor's hardship in being required to defend the action."  148 B.R. at 923.  That court concluded that the debtor's hardship was minimal as it would be required to simply hire local counsel, participate in discovery and testify.  *Id*. at 923-24.  In this instance, the state court action is in the same state as the bankruptcy case.  No travel is required.  Counsel has already been retained.  Spot will be required to officially litigate as a party in the state court and incur related litigation costs, when Spot would already be subject to discovery in the state court action as Haws, Mr. Pettibone and Spot Investments, LLC are the alter ego of Spot.  *See* McMillen Dec., Exhibits 2, 3.

As long as discovery is sought for purposes other than to continue prosecution of the claims against Spot, any discovery in the state court matter will not violate the automatic stay. *Groner v. Miller (In re Miller),* 262 B.R. 499 (9th Cir. BAP 2001); *see also United Nat. Funding, LLC v. JetDirect Aviation, Inc.*, 2012 WL 2514929 (D. Nev. 2012) ("The automatic stay does not protect a debtor from complying with discovery requests in a multi-defendant action where the debtor is a Defendant, but where the requests for discovery pertain to claims against other non-debtor Defendants.") (citations omitted).  "Information is information, and

-14-

we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay." *Groner*, 262 B.R. at 505.

"'Discovery and all other proceedings shall continue in the litigation among [the non-debtor parties] as if [the debtor] were an interested non-litigant,' but all 'discovery and other proceedings against [the debtor] and its experts are stayed until the lifting or modification of the automatic stay.'" *In re Kenoyer*, 489 B.R. 103 (2013) (*citing In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969 (N.D.Ill.1992). "However… the debtor must participate in the proceedings as a non-party but not as a party because … the automatic stay does not affect discovery regarding [the other defendants], and that [the debtor] is obliged to participate to the extent it would be as a non-party.'" *Id.*

Therefore, pursuant to 11 U.S.C.A. § 362(a)(1), the automatic stay does not protect Spot from complying with discovery requests in a multi-defendant action where the debtor (Spot) is a defendant, but where the requests for discovery pertain to the claims against the other non-debtor Defendants. *See* 11 U.S.C.A. § 362(a)(1); In re Miller, 262 B.R.at 504. As a result, good cause exists to lift the stay as Spot will participate in discovery of the state court action as a "non-party" anyway.

The necessary effort and cost of litigating in the state court action will be minimal because Spot will already be involved in the state action through discovery. In contrast, should the state court action remain stayed as to Spot, the underlying issues will instead have to be litigated before this Court. As a result, Spot will not only need to complete a trial and incur related litigation costs in this matter, but will also incur substantial costs merely duplicating the discovery work that will be completed before the state court.

In contrast, Peddie will suffer substantial prejudice, in the form of unnecessary and duplicative litigation costs, if the stay is not lifted. Indeed, "public policy also favors judicial

economy and minimizing expense for the parties to the litigation." *Buke, LLC v. Eastburg (In re Eastburg)*, 440 B.R. 864 (Bankr. D.N.M. 2010). The cost of litigation before any court other than the state court would be a monumental waste of judicial resources and the parties' resources. For this reason alone, the state court action should be permitted to proceed as against Spot.

Given that lifting the stay will cause no harm to Spot, and that failure to do so would cause substantial harm to Peddie and Spot's other creditors, the balance of harm weighs in favor of granting relief from the stay.

In sum, all of the applicable *Curtis/Sonnax* factors weigh in favor of granting relief from the automatic stay. Spot's bankruptcy cannot meaningfully proceed until the state action is resolved. The state court has expertise in Peddie's claims and is familiar with the state court action. There is no utility in duplicating those proceedings in this Court given the significant and unnecessary costs that such a course of action would impose on Spot's estate and Peddie.

## CONCLUSION

WHEREFORE, Timm Peddie respectfully requests that this Court enter an order: (i) granting relief from the automatic stay to allow the Nevada state court action to proceed; and (ii) grant such other relief as is just and proper.

A copy of the proposed Order granting this Motion for Relief from Automatic Stay is attached as Exhibit 6 to the McMillen Declaration, filed herewith.

Dated: This 24th day of January, 2014.

WATSON ROUNDS, PC

/s/ Adam P. McMillen
Adam P. McMillen, Esq.
Nevada Bar No. 10678
5371 Kietzke Lane
Reno, Nevada 89511
Facsimile: (775) 333-8171
*Attorneys for Timm Peddie*

-16-

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of WATSON ROUNDS, P.C., and on this 27th day of January, 2014, I served the document entitled **MOTION FOR RELIEF FROM AUTOMATIC STAY** on the parties listed below via the following:

| | |
|---|---|
| Jeffrey L. Hartman, Esquire | W. Donald Gieseke |
| Hartman & Hartman | 18124 Wedge Parkway, Suite 518 |
| 510 West Plumb Lane, Suite B | Reno, NV 89511 |
| Reno, NV 89509 | *Bankruptcy Trustee* |
| *Attorney for Debtor* | |

Stephen R. Harris, Esquire
Harris Law
6151 Lakeside Drive
Reno, NV 89511
*Attorney for Bankruptcy Trustee*

| | |
|---|---|
| J. Robert Smith, Esquire | Robert A. Dotson, Esquire |
| Tamara Reid, Esquire | Angela M. Bader, Esquire |
| Holland & Hart LLP | Laxalt & Nomura, Ltd. |
| 5441 Kietzke Lane, Second Floor | 9600 Gateway Drive |
| Reno, NV 89511 | Reno, NV 89521 |
| Email:  jrsmith@hollandhart.com | Telephone:  (775) 322-1170 |
|          treid@hollandhart.com | Fax:          (775) 322-1865 |
| Fax:  (775) 786-6179 | Email:  rdotson@laxalt-nomura.com |
| Attorneys for HAWS CORPORATION and |          abader@laxalt-nomura.com |
| JOHN PETTIBONE | Attorneys for SPOT DEVICES, INC. and |
| | SPOT INVESTMENTS, LLC |

☒    **VIA FIRST CLASS U.S. MAIL:** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Reno, Nevada for delivery to the foregoing.

☐    **VIA FACSIMILE:** by transmitting to a facsimile machine maintained by the person on whom it is served at the facsimile machine telephone number as last given by that person on any document which he/she has filed in the cause and served on the party making the service.  The copy of the document served by the facsimile transmission bears a notation of the date and place of transmission and the facsimile telephone number to which it was transmitted.

☐    **BY PERSONAL SERVICE:** by personally hand-delivering or causing to be hand delivered by such designated individual whose particular duties include delivery of such on behalf of the firm, addressed to the individual(s) listed, signed by such individual or his/her representative accepting on his/her behalf.

☐    **VIA COURIER:** by delivering a copy of the document to a courier service for over-night delivery to the foregoing parties.

*///*

1

☐    **VIA ELECTRONIC SERVICE:** by electronically filing the document with the Clerk
of the Court using the ECF system which served the foregoing parties electronically.

2

3

4

5

_/s/ Nancy R. Lindsley_
Employee of Watson Rounds, P.C.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28