STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600
E-Mail: steve@harrislawreno.com
Attorneys for Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\*\*\*\*\*

| IN RE: | BK-N-13-51731-btb |
| | (Chapter 7) |
| SPOT HOLDINGS, INC., fdba SPOT DEVICES, INC. | **REPLY TO OPPOSITION TO MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF ESTATE CLAIMS (HAWS CORPORATION, INC.)** |
| Debtor. | Hrg. Date: January 13, 2015 |
| | Hrg. Time: 2:00 p.m. |
| | Est. Tim: 20 minutes |
| | Set By: Calendar Clerk |

Chapter 7 Trustee, W. Donald Gieseke, by and through his counsel, Stephen R. Harris, Esq., of Harris Law Practice LLC, hereby files the following REPLY TO OPPOSITION TO MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF ESTATE CLAIMS (HAWS CORPORATION, INC.). This Reply is made and based upon the pleadings on file herein and the Memorandum of Points and Authorities attached hereto.

**1.    Background**

The Trustee filed his MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF ESTATE CLAIMS (HAWS CORPORATION, INC.) [Docket No. 92] ("Motion") on December 16, 2014. On December 19, 2014, Tim Peddie filed his OPPOSITION TO MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF ESTATE CLAIMS (HAWS CORPORATION) [Docket No. 97] ("Opposition"). The Trustee's Motion has requested that

this Court approve the proposed compromise and settlement of all claims **of the Debtor** against Haws Corporation, Inc. ("Haws"), except for those purported claims involving Haws' security interests on certain of the Debtor's assets. These claims are the subject of the state court action filed by Tim Peddie entitled *Peddie vs. Spot Devices Inc., et. al*. Case No.  CV13-01446 ("State Court Litigation"). There are seven (7) claims in the State Court Litigation described as follows:

1. Breach of Fiduciary Duty;

2. Constructive Fraud;

3. Declaratory Judgment as to NRS 92A;

4. Aiding and abetting the breach of fiduciary duty;

5. Interference with prospective economic advantage;

6. Unjust enrichment; and

7. Permanent injunction regarding NRS 92A.

In his November 25, 2013 opinion, Judge Hardy classified Mr. Peddie's claims for breach of fiduciary duty; constructive fraud, aiding and abetting a breach of fiduciary duty, unjust enrichment and interference with prospective economic advantage, as belonging to Spot, citing *In re AgriBioTech*, 319 B.R. 216 (Bkrtcy D. Nev. 2004). See Page 5, Lines 11-20 of November 25, 2013 opinion, which has been attached as Exhibit "1" hereto. As these five (5) claims belonged to Spot, they were subject to the Section 362(a) automatic stay provisions when Spot filed its Chapter 7 case. Judge Hardy ruled that Mr. Peddie could proceed only with his claims for declaratory relief and permanent injunction based on a dissenting owner's right to payment for their shares, and that he could proceed against Haws and John Pettibone as alter egos. Id page 8, Lines 12-15.

On August 4, 2014, Judge Hardy issued a second order in response to Defendants' motion to dismiss Mr. Peddie's claims as derivative. He ruled that Mr. Peddie may amend his first amended complaint to address a possible de facto merger. He may also allege additional facts regarding the existence of controlling shareholders in order to state **individual** breach of fiduciary and fraud claims. See Page 12, Lines 16-20 of the August 4, 2014 opinion, which has been attached as Exhibit "2" hereto.

### 2.    Mr. Peddie's Opposition

Mr. Peddie argues that the Trustee's Motion is based upon a false premise - that Judge Hardy made a finding that certain claims were derivative in nature and belonged to the estate. Mr. Peddie points out that he may proceed in a limited aspect as discussed in the preceding section, as ordered by Judge Hardy.

Second, Mr. Peddie argues that the Trustee is attempting to extinguish rights that do not belong to the bankruptcy estate, specifically, any claim that Mr. Peddie could bring in a derivative manner. Opposition page 6, Lines 26-27.

Third, it is alleged that the Trustee has failed to demonstrate that the $80,000.00 settlement figure is a reasonable figure.

Fourth, it is alleged that the A&C Properties case factors weigh against settlement.

### 3.    Trustee's reply to false premises and extinguishment of rights

Mr. Peddie believes the claims in the State Court litigation that Haws is purchasing from the Trustee are not derivative in nature. He cites *Gentile v. Rossette* 906 A.2d 91 (Del. 2006) in support of the premise that certain corporate claims can be both derivative and direct in nature.

Mr. Peddie's claim of a false premises is incorrect. As specifically stated in the Trustee's Motion under the section "*Relief Sought*", it is clear that only the derivative claims are being settled. No direct claim is being compromised by the Trustee. This is proper. A derivative claim is one brought by a shareholder on behalf of the corporation to recover for harm done to the corporation. *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 62 P.3d 720, (Nev. 2003).

*In re Western World Funding, Inc.,* 52 B.R. 743 (Bankr. D. Nev.1985) and *In re AgriBioTech, Inc.*, 319 B.R. 216, (D. Nev. 2004) have eached addressed the issue of estate property and derivative claims: "*Where the injury alleged is primarily to the corporation, and is injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee;  if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue.*" *In re AgriBioTech, Inc.*, 319 B.R. at 221, citing *Western World Funding.*

1  For this reason, all derivative claims are property of the Spot Chapter 7 bankrupt estate.

2  and all direct claims of Mr. Peddie are not.

3  The danger of Mr. Peddie's argument is that he is seeking a ruling from this Court as to

4  what is derivative and what is direct, when Judge Hardy indicated in his August 4, 2014, Order

5  that Mr. Peddie can amend his complaint. Thereafter, Judge Hardy will determine the exact

6  nature of the claims.

7  Mr. Peddie's argument spills much ink on why his claims are not derivative, however,

8  that is not an issue for this Court to determine. A federal district court lacks the jurisdiction to

9  hear a collateral attack on a state court judgment or to review final determinations of state court

10  decisions. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923);

11  *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d

12  206 (1983).

13  *Rooker-Feldman* may also apply where the parties do not directly contest the merits of a

14  state court decision, as the doctrine prohibits a federal district court from exercising subject

15  matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment. A federal

16  action constitutes such a *de facto* appeal where claims raised in the federal court action are

17  inextricably intertwined' with the state court's decision such that the adjudication of the federal

18  claims would undercut the state ruling or require the district court to interpret the application of

19  state laws or procedural rules. *Reusser v. Wachovia Bank, N.A.,* 525 F.3d 855, 859 (9th Cir.

20  2008).

21  Judge Hardy has found that the derivative claims in the State Court Litigation are stayed.

22  He has also granted leave to Mr. Peddie to supplement his pleadings as to any direct claim he

23  may have that is not derivative. Now, Mr. Peddie seeks this court to adjudicate the

24  derivative/direct claim distinction when that issue is now pending before Judge Hardy.

25  The clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when a

26  federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and

27  seeks relief from a state court judgment based on that decision. *Henrichs v. Valley View Dev.,*

28  474 F.3d 609, 613 (9th Cir.2007).

**4.    Trustee's reply to settlement amount and A&C Properties Factors.**

*In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) sets forth the four factors for a Court to weigh the reasonableness of a compromise under Fed. R. Bank. Pro. 9019.

1.    The probability of success in the litigation;

2.    The difficulties, if any, to be encountered in the matter of collection;

3.    The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it;

4.    The interest of the creditors and a proper deference to their reasonable views in the premises, which is considered paramount.

These factors were examined by Judge Nakagawa in *In re HyLoft*, 451 B.R. 104, (Bkrtcy. D. Nev. 2011). The following comment has application to this case: *"when assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. Otherwise, there would be no point in reaching a settlement, and the parties may as well try the case"*. Id at 109.

Mr. Peddie does not discuss the reasonableness of the settlement. Rather, he contests the underlying facts and seeks an adjudication of his claims. That is not the proper analysis.

In deciding whether to approve a proposed settlement, the bankruptcy court must make an informed decision. The proponent of the settlement must persuade the court that the settlement is in the best interests of the estate. Id.

This is not the first case in the Nevada courts that have involved the compromise of litigation claims by a Trustee. *Suter v. Goedert*, 396 B.R. 535, (D. Nev. 2008) involved a legal malpractice claim by the Suters against their attorney, the Warren Goedert lawfirm. The claim was based on undisclosed conflict of interest. The Goedert firm had represented the Suters in a suit against a rehabilitation center where their teenage daughter was institutionalized. The center had employed inappropriate therapy. A member of the Goedert firm had been a patient of the chief of staff of the rehabilitation center, which was not disclosed to the Suters.

When the Suters filed bankruptcy, the Goedert firm contacted the Bankruptcy Trustee and offered to pay $10,000.00 to settle the lawsuit. The Trustee filed a motion to approve the

compromise and sale of claims. The Suters appeared at the hearing and matched the offer, but the Goedert firm was able to outbid them. The Goedert firm then had the Suters' claim against it dismissed. The case went on appeal, wherein to the 9th Circuit held the Suters could revive their appeal before the Nevada Supreme Court by filing a motion for an extraordinary writ. The Ninth Circuit then remanded the case to the District Court to hear the Suters' appeal from the Bankruptcy Court on the merits. Judge Reed had previously ruled the bankruptcy court did not abuse its discretion in confirming the compromise of the claim.

On remand the District Court considered two issues. First, whether the legal malpractice lawsuit was property of the estate;  and (2) if so, did the bankruptcy court abuse its discretion in confirming the sale or compromise of the claim to the Goedert firm.

The District Court held that legal causes of action are property of the estate. These include pre-petition tort claims. Id at 542. The Court cited *In re Sierra Switchboard,* 789 F.2d 705, (9th Cir.1986) which had held all property, even exempt property, is initially property of the estate. This principal applies regardless of whether a personal injury claim is transferable or assignable under state law. The claims still become part of the bankruptcy estate under section 541. *Sierra Switchboard,* 789 F.2d at 708.

However, in a footnote the *Sierra Switchboard* Court noted that it need not decide whether emotional distress might in some circumstances be so personal to the debtor that it would be undesirable, on public policy grounds, to transfer the property interest to the bankruptcy trustee. *Sierra Switchboard,* 789 F.2d at 709, n. 3[1].

In dicta, the *Suter* Court set forth three related reasons for finding an action to be so personal as to exclude it from the bankruptcy estate:

(1)     Permitting the debtor to prosecute intimately personal claims serves as a type of catharsis for the debtor;

---

[1]  Based upon a 2010 opinion from the 9th Circuit Bankruptcy Appellate Panel, it is uncertain that personal claims can be excluded from the estate if they fall under these factors. See *In Re Flores,* 2010 WL 6259989 (9th BAP 2010) which stated: "We note that, since *Sierra Switchboard Co.* was decided in 1986, no court in any circuit has determined that personal injury claims are so personal to the debtor that they should be excluded from the estate. No decision that we or the Floreses have found applies the *Suter* analysis to arrive at the result the Floreses want. Suter developed a test based on dictum in *Sierra Switchboard Co.* that has never been applied, in the Ninth Circuit or elsewhere, to exclude debtors' personal injury claims from their bankruptcy estates."

Harris Law Practice LLC
6151 Lakeside Drive
Suite 2100
Reno, Nevada 89511
(775) 786 7600

(2)    It seems unfair to allow a defendant to "buy" his or her own wrong and to keep it from public scrutiny and

(3)    Compensation for personal injury claims are intended to make a plaintiff whole, not merely to pay off a debt. Id at 546.

The *Suter* Court found no sufficient public policy reason to exclude the malpractice action from the estate.

To summarize, all pre-petition legal causes of action held by the Debtor are property of the estate. An exception may be made upon personal or public policy grounds, but those are strictly construed. Here, the Debtor is a corporation. It is not in need of a catharsis. The Debtor is not attempting to keep the claim from public scrutiny as Mr. Peddie is free to pursue the direct claims that are not derivative in nature. Lastly, the claims were filed to satisfy a debt, not to make the Debtor whole.

The Suter Court then went over the elements in the A&C Properties factors set forth above.

As to the first factor, the probability of success, the Suter Trustee determined that there would be a low probability of success in the litigation in light of the defendants' success at the state district court level. That is the situation in this case here.

Judge Hardy's August 4, 2014 Order summarizes the relevant facts:

(1)    Haws loaned $6.7 million to Spot.

(2)    Spot conducted a debt-equity conversion in 2011 to satisfy this debt.

(3)    Spot issued 87 million shares at $0.077 per share. This increased the number of authorized shares from 36.7 million to 126.7 million.

(4)    The transaction was based upon a business valuation conducted by a third party.

(5)    Spot was valued at approximately $1 million dollars.

(6)    Mr. Peddie's requests for a revaluation were ignored by the board.

(7)    The revaluation caused Mr. Peddie to hold less than 2% of the stock.

Please see Page 2, Lines 16-26 of Judge Hardy's August 4, 2014 opinion.

Spot's board has the protection of the business judgment rule. It is a presumption the board acted in good faith. With the existing debt and the third party valuation, the Trustee believes the probability of success in the State Court Litigation is low, given Judge Hary's Order classifying certain claims being asserted by Mr. Peddie, as derivitive in nature.

As to the second factor, the Suter Trustee figured that while collection of funds would not be difficult, it would be delayed. She thought it best to settle the claim. In the case at bar, the facts are similar.

While the Trustee believes Haws does have sufficient funds to pay any judgment that might be obtained, it also has filed a Proof of Claim for over $4 million dollars. Total claims in the Spot bankrupt estate are over $9 million. Haws has almost 50% of the claims, so a substantial of any recovery would go back to Haws.

Moreover, even if the Trustee were able to get a judgment against Haws, he would be faced with the same delays the Suter Trustee was concerned about.

As to the third factor, the law is complex. This is not a simple malpractice case as was involved in Suter. Rather, it is a complex amalgam of direct vs. derivative claims and the business judgment rule.

The fourth and final factor is the best interest of the creditors. 11 U.S.C. §704(a) requires the Trustee to collect and reduce to money the property of the estate in an expeditious manner. The amount of the settlement is $80,000.00. While Mr. Peddie says this not a fair figure, he is free to overbid at the hearing like the Suters did.

Simply stated, the sale of these claims have value to only two parties - Haws and Mr. Peddie. No one else would buy them due to the uncertainty of the ongoing litigation. Therefore, if Mr. Peddie believes the claims are worth more, he is free to bid more than $80,000.00.

All of these factors weigh in favor of the settlement proposed by the Trustee

## 5.    Conclusion

The law in the Ninth Circuit is clear that pre-petition litigation claims become property of the estate. Those include derivative claims as they are owned by the corporate debtor. They do not include direct claims, nor is the Trustee attempting to sell any direct claims.

Harris Law Practice LLC
6151 Lakeside Drive
Suite 2100
Reno, Nevada 89511
(775) 786 7600

Mr. Peddie's opposition would have this Court determine what is and what is not a derivative claim. That is an improper request, as Judge Hardy is in the process of making the determination. The settlement proposed by the Trustee merely extinguishes all derivative claims. It does nothing else. For those reasons, it should be approved.

DATED this 6th day of January, 2015.

HARRIS LAW PRACTICE LLC
STEPHEN R. HARRIS, ESQ.

By: _/s/ Stephen R. Harris, Esq._
Attorneys for Trustee

# EXHIBIT "1"

# EXHIBIT "1"

F I L E D
Electronically
11-25-2013:10:07:03 AM
Joey Orduna Hastings
Clerk of the Court
Transaction # 4157785

1    CODE:

2

3

4

5    IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

6    IN AND FOR THE COUNTY OF WASHOE

7

8    TIM PEDDIE, individually,

9    Plaintiff,                                    Case No.    CV13-01446

10    vs.                                          Dept. No.    15

11    SPOT DEVICES, INC., a Nevada
12    corporation; HAWS CORPORATION, a
      Nevada corporation; SPOT
13    INVESTMENTS, LLC, a Nevada company;
14    JOHN PETTIBONE, individually; ROE
      CORPORATIONS I through X, inclusive;
15    and DOES I through X, inclusive,

16

17    Defendants.
      _____/

18

19    **ORDER ADDRESSING MOTIONS**

20    Before this Court are Defendants Haws Corporation and John Pettibone's Motion

21    to Stay Proceedings and Plaintiff Tim Peddie's Motion for Leave to File Surreply.[1]

22    Defendant Spot Holdings, Inc. (sued as Spot Devices, Inc., hereinafter "Spot") filed a

23    Chapter 7 bankruptcy petition on August 29, 2013, and the scope of the 11 U.S.C. § 362(a)

24    automatic stay is at issue.  This Court has jurisdiction to determine the scope of the stay.[2]

25    _____

26    [1] Defendants Spot Holdings, Inc. and Spot Investments, LLC have joined in both the Motion to Stay and the Opposition
      to Plaintiff's Motion for Leave to File Surreply.

27    [2] Whitehead v. Nevada Comm'n on Judicial Discipline, 110 Nev. 128, 136, 906 P.2d 230, 235 (1994) (referring to the
28    "jurisdiction to determine jurisdiction" doctrine); Lockyer v. Mirant Corp., 398 F.3d 1098, 1105 (9th Cir. 2005) (citing In re
      Gruntz, 202 F.3d 1074 (9th Cir. 2000)) ("[A] state court has the authority to decide whether its proceeding is within the
      scope of the automatic stay.").

1

## Background

Plaintiff Tim Peddie was founder, chief executive officer and member of the board of Spot from 2002 to 2004. In 2004, Defendant Haws and its chief financial officer John Pettibone invested in Spot. As a result, Mr. Peddie's stock holdings were reduced from 100% to 28%. Mr. Peddie alleges that Haws and Mr. Pettibone (hereinafter "non-debtor Defendants") thereafter repeatedly disregarded corporate formalities and conducted Spot's business to further their own interests. Mr. Peddie alleges they converted Spot's assets to separate entities controlled by themselves without a share conversion or compensation to shareholders. In May 2013 he inquired about payment for his shares but was refused compensation.

Mr. Peddie's Complaint includes seven claims for relief: 1) breach of fiduciary duty, 2) aiding and abetting breach of fiduciary duty, 3) constructive fraud, 4) interference with prospective economic advantage, 5) unjust enrichment, as well as 6) declaratory judgment and 7) permanent injunction to enforce his right to payment for his shares under the dissenting owners statutes, NRS 92.300 et seq. Mr. Peddie twice refers to the non-debtor Defendants in his Complaint as Spot's alter ego. Compl. 3:4, 7:12-13.

## Statement of Allegations

The non-debtor Defendants argue they are protected by the automatic stay because Mr. Peddie's claims against them are based on piercing Spot's corporate veil. They argue the alter ego claims require Mr. Peddie to first establish Spot is liable before piercing the corporate veil, which action would violate the stay.

Mr. Peddie opposes the motion, arguing the stay protects only Spot and not non-debtors: "[I]f the bankruptcy stay remains in place, Plaintiff's claims will not reach the property of Spot or otherwise impact property of the bankruptcy estate. . . . No party has alleged that Spot's estate would be diminished by any judgment in favor of the Plaintiff and against non-debtors." Opp. 2-3. He argues that piercing the corporate veil, by definition, requires disregarding Spot to hold the non-debtor Defendants liable.

/ / /

<u>Legal Analysis</u>

Pursuant to 11 U.S.C. § 362, the filing of a bankruptcy petition operates as a stay of judicial action against the debtor and acts to obtain possession or control of property of the estate. 11 U.S.C. § 362(a)(1), (3). The purpose of the stay is to protect debtors from collection efforts while they attempt to regain their financial footing and allow them breathing space to attempt a repayment or reorganization plan. <u>In re Schwartz</u>, 954 F.2d 569, 571 (9th Cir. 1992). It is designed to maintain the status quo, ensure all claims against the debtor are brought in a single forum and protect the rights of creditors to equal distribution. <u>In re Ramirez</u>, 183 B.R. 583, 587 (B.A.P. 9th Cir. 1995). Any judgment rendered in violation of the stay is void. <u>In re Schwartz</u>, 954 F.2d at 571.

As a general rule, the automatic stay protects only the debtor and the property of the estate. "'Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor.'" <u>Boucher v. Shaw</u>, 572 F.3d 1087, 1092 (9th Cir. 2009) (quoting <u>In re Chugach Forest Prods., Inc.</u>, 23 F.3d 241, 246 (9th Cir. 1994)). "Similarly, the automatic stay does not protect the property of parties such as officers of the debtor, even if the property in question is stock in the debtor corporation, and even if that stock has been pledged as security for the debtor's liability." <u>Id.</u> at 1092-93. Only bankruptcy courts have authority to extend the automatic stay to causes of action against non-debtor co-defendants found not within the scope of the stay. <u>In re Gruntz</u>, 202 F.3d at 1082-84.

However, some causes of action may belong to a corporate debtor, in which case they are property of the estate and subject to the automatic stay. <u>In re AgriBioTech, Inc.</u>, 319 B.R. 216, 219 (Bankr. D. Nev. 2004); <u>Matter of S.I. Acquisition, Inc.</u>, 817 F.2d 1142, 1150-52 (5th Cir. 1987). In a suit against a debtor corporation and non-debtor directors, officers or shareholders, by which plaintiff seeks to pierce the corporate veil and obtain a judgment against the non-debtors as alter egos of the corporation, a court must answer two questions as to each cause of action to determine whether it is within the scope of the automatic stay: 1) does the cause of action based on alter ego belong to the corporate

3

debtor; and, if not, 2) does the cause of action based on alter ego seek to recover or control property of the debtor. Matter of S.I. Acquisition, Inc., 817 F.2d at 1151. "When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim." Achom, Ltd. V. Smeding, 623 F.3d 1248, 1250 (9th Cir. 2010). A claim belonging to the trustee may be brought by an individual creditor only where the trustee has abandoned it by failing to assert the injury. E.g., Koch Refining v. Farmers Union Cent. Exchange, Inc., 831 F.3d 1339, 1346-47 (7th Cir. 1987) ("The trustee may abandon an action to a third party, and that party may then pursue it.").

Whether a cause of action belongs to the corporate debtor or an individual creditor is a question of state law. E.g., Achom, 623 F.3d at 1250. This Court must determine which of Mr. Peddie's causes of action belong to the trustee under Nevada law and are therefore stayed as property of the estate. Any causes of action that do not belong to the trustee but seek to recover or control property of the estate must also be stayed pursuant to 11 U.S.C. § 362(a)(1), (3). For any other causes of action, the stay may be extended only by an adversary proceeding in the bankruptcy matter. In re Gruntz, 202 F.3d at 1082-84.

I.    **Certain Causes of Action Asserted by Mr. Peddie Belong to Spot Pursuant to Nevada Law and are Therefore Subject to the Automatic Stay.**

All causes of action, with the exception of claims based on Mr. Peddie's right to payment for his shares as a dissenting owner, belong to Spot and therefore the bankruptcy trustee. Accordingly, the first cause of action for breach of fiduciary duty, the second cause of action for constructive fraud, the fourth cause of action for aiding and abetting the breach of fiduciary duty, the fifth cause of action for interference with prospective economic advantage and the sixth cause of action for unjust enrichment are stayed as property of the estate.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The debtor's estate . . . includes any causes of action of the debtor at the commencement of bankruptcy proceedings." In re AgriBioTech, Inc., 319 B.R. at 219. Whether the stay applies depends, first, on whether a given cause of action based on alter ego belongs to the corporate debtor

4

1  under state law. Matter of S.I. Acquisition, Inc., 817 F.2d at 1151. "The question in each

2  case is whether the claim asserted by the trustee is one in which the estate has an interest."

3  In re AgriBioTech, 319 B.R. at 221-22. Thus, alter ego claims are not per se within the scope

4  of the corporation's automatic stay. Achom, 623 F.3d at 1252-53 ("Just because [corporate

5  defendant's] trustee could not bring such a[n alter ego] claim against the Smedings under

6  California law, there is no reason why [plaintiff's] claims against [non-debtor

7  shareholders] cannot proceed."); In re Cincom iOutsource, Inc., 398 B.R. 223 (Bankr. S.D.

8  Ohio 2008) (holding that alter ego claims against corporate debtor's parent corporation did

9  not belong to trustee and continued prosecution of the claims was not an act to exercise

10  control over property of the estate).

11      Under Nevada law, a cause of action for breach of fiduciary duty or aiding and

12  abetting a breach of fiduciary duty belongs to the corporation. In re AgriBioTech, 319 B.R.

13  at 223 (citing Pepper v. Litton, 308 U.S. 295, 306-07 (1939)). This was also the holding in

14  Buchanan v. Henderson, 131 B.R. 859, 865 (Bankr. D. Nev. 1990), rev'd on other grounds

15  by Henderson v. Buchanan, 985 F.2d 1021 (9th Cir. 1993). Therefore, the causes of action

16  based on breach of fiduciary duty belong to Spot and are subject to the automatic stay.

17      The causes of action for constructive fraud, unjust enrichment and interference with

18  prospective economic advantage also belong to Spot because "the injury alleged is

19  primarily to the corporation, and is injury to the plaintiff creditor only insofar as it

20  decreases the assets of the corporation." In re AgriBioTech, 319 B.R. at 221. By his

21  constructive fraud cause of action, Mr. Peddie alleges that the non-debtor Defendants used

22  their position of trust to personally benefit themselves "at the expense of the corporation

23  and common shareholders, such as Mr. Peddie." Compl. 10-21-25. By his interference

24  with prospective economic advantage cause of action, Mr. Peddie alleges the non-debtor

25  Defendants engaged in interested transactions when they sold Spot's assets, depriving

26  Spot of profit it could have obtained from selling those assets "in a disinterested

27  environment." Id. at 14:18-28. Similarly, the unjust enrichment cause of action states that

28  "Defendants have received, and they retain, money and property of Spot and Mr. Peddie .

1  . . . Mr. Peddie and Spot's common shareholders have suffered damages as a result." Id.

2  at 15:9-12.  Because the injuries alleged are to Spot and common shareholders, generally,

3  and the damage to Mr. Peddie only results therefrom, these causes of action belong to

4  Spot.

5  II.  **The Claims for Declaratory Relief and Permanent Injunction are not Stayed**
     **Because They do not Belong to the Trustee and, as Pursued Against the Non-**
6       **Debtor Defendants as Alter Egos of Spot, do not Seek to Control Property of the**
7       **Debtor.**

8         Mr. Peddie's claims seeking payment for his shares as a dissenting owner are

9   personal claims in which Spot's estate has no interest.  Pursuant to NRS 92A.460(1), a

10  shareholder dissenting to a merger may demand payment for their shares, and the district

11  court may enforce the obligation.  Because Mr. Peddie may seek to hold the non-debtor

12  Defendants liable as alter egos of Spot, NRS 78.747(1), the claims are not judicial action

13  against the debtor or acts to obtain possession of property of the estate.  11 U.S.C. §

14  362(a)(1), (3).

15        In Buchanan, 131 B.R. at 864-65, rev'd on other grounds by Henderson v. Buchanan,

16  985 F.2d 1021 (9th Cir. 1993), the Bankruptcy Court for the District of Nevada held that a

17  bankruptcy trustee does not have standing under § 544(a) to assert an alter ego claim on

18  behalf of a creditor.  However, even if the trustee does not have standing, the claim may be

19  subject to the stay if it seeks to recover or control property of the debtor.  Matter of S.I.

20  Acquisition, 817 F.2d at 1151.

21        Pursuant to NRS 78.747(1), stockholders, directors and officers may be held

22  individually liable for a corporate debt if they acted as the alter ego of the corporation.

23  "[C]laimants who plead and prove specific elements of control, identity, and resulting

24  fraud or injustice may ignore statutory limited liability of corporate shareholders."  In re

25  Giampietro, 317 B.R. 841, 848 (Bankr. D. Nev. 2004) (citing Frank McCleary v. Cattle Co. v.

26  Sewell, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957)).  Because the claims for declaratory relief

27  and permanent injunction based on Spot's alleged liability to Mr. Peddie for the value of

28

1  his shares may be pursued against the non-debtor Defendants as alter egos of Spot, there is

2  no reason the automatic stay should preclude them from proceeding.

3        "In [determining whether alter ego claims are subject to the automatic stay,] we do

4  so by keeping in mind the Bankruptcy Code's general policies of securing and preserving

5  the debtor's property and of ensuring equal distribution." Matter of S.I. Acquisition, 817

6  F.2d at 1150. In Chugach, the Ninth Circuit Court of Appeals stated that the scope of the §

7  362(a) stay should be determined with the legislative purpose of that section in mind:

8  "[W]hile seemingly broad in scope, the automatic stay provisions should be construed no

9  more expansively than is necessary to effectuate legislative purpose." 23 F.3d at 245

10  (citing In re Inslaw, Inc., 932 F.2d 1467, 1473 (D.C. Cir. 1991), which states "the object of the

11  automatic stay provision is essentially . . . to make sure that creditors do not destroy the

12  bankrupt estate in their scramble for relief. Fulfillment of that purpose cannot require that

13  every party who acts in resistance to the debtor's view of its rights violates § 362(a).").  Mr.

14  Peddie aptly points out that "a judgment from this action against the non-debtor

15  defendants might actually facilitate Spot's Chapter 7 liquidation by allowing him to satisfy

16  his claims against Spot with the assets of the non-debtor Defendants, thereby preserving

17  Spot's assets for other creditors."  Opp. 6:12-16.

18        The non-debtor Defendants argue that Spot is a necessary party to the claims for

19  declaratory relief and injunction.  Mot. 6-9 (Aug. 30, 2013).  Pursuant to NRS 30.130,

20  "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim

21  any interest which would be affected by the declaration."  And NRCP 19 requires joinder

22  of a party where the court could not accord complete relief among the existing parties or

23  dispose of the action without risking the absent party's ability to protect their interests.

24  The non-debtor Defendants do not explain how Spot has anything at stake in claims

25  against the non-debtor Defendants as its alter egos, even if the claims involve valuation of

26  Spot.

27        There is a question as to whether the non-debtor Defendants could seek

28  indemnification from Spot if judgment was entered against them for the value of Mr.

1  Peddie's shares. <u>Boucher</u>, 572 F.3d at 1093. If this is the case and extension of the stay to

2  the non-debtor Defendants is necessary as a result, "the bankruptcy court would first need

3  to extend the automatic stay under its equity jurisdiction." <u>Id.</u> at 1093 n.3.

4       Because the claims for declaratory relief and permanent injunction based on a

5  dissenting owner's right to payment for their shares cannot be brought by the trustee and

6  may be pursued against the non-debtor Defendants as alter egos of Spot, they may

7  proceed to the extent they are pursued against the non-debtor Defendants.

8  Conclusion

9       The Motion for Leave to File Surreply is denied. There is no rule permitting a

10 surreply, and this Court cannot identify any new and pertinent arguments set forth in the

11 Reply that would warrant one.

12      The Motion to Stay Proceedings is granted in part and denied in part. Only Mr.

13 Peddie's claims for declaratory relief and permanent injunction based on a dissenting

14 owner's right to payment for their shares may proceed against Defendants Haws

15 Corporation and John Pettibone as alter egos of Defendant Spot Holdings, Inc.

16 **IT IS SO ORDERED.**

17      Dated: November _23_, 2013.

18

19                           David A. Hardy

20                           District Court Judge

8

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Second Judicial District Court of the State of Nevada, in and for the County of Washoe; that on the *25* day of *November*, 2013, I electronically filed the foregoing with the Clerk of the Court system which will send a notice of electronic filing to the following:

ADAM MCMILLEN, ESQ. for TIM PEDDIE

J. SMITH, ESQ. for JOHN PETTIBONE, HAWS CORPORATION

TAMARA REID, ESQ. for JOHN PETTIBONE, HAWS CORPORATION

ROBERT DOTSON, ESQ. for SPOT DEVICES, INC., SPOT INVESTMENTS, LLC

ANGELA BADER, ESQ. for SPOT DEVICES, INC., SPOT INVESTMENTS, LLC

Further, I certify that I deposited in the county mailing system for postage and mailing with the U.S. Postal Service in Reno, Nevada, a true copy of the foregoing addressed to:

N/A

Department 15 Judicial Assistant

PRO: «pro_rec_num»

# EXHIBIT "2"

# EXHIBIT "2"

F I L E D
Electronically
2014-08-04 04:27:46 PM
Joey Orduna Hastings
Clerk of the Court
Transaction # 4546186

1  CODE:

2

3

4

5

6           IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

7                      IN AND FOR THE COUNTY OF WASHOE

8

9  TIMM PEDDIE, individually,

10                 Plaintiff,                  Case No.    CV13-01446

11        vs.                                  Dept. No.   15

12  SPOT DEVICES, INC., a Nevada
    corporation; HAWS CORPORATION,
13  a Nevada corporation; SPOT
    INVESTMENTS, LLC, a Nevada
14  company; JOHN PETTIBONE,
    individually; ROE CORPORATIONS I
15  through X, inclusive; and DOES I
16  through X, inclusive,

17

18                 Defendants.

19  _____/

20              ORDER ADDRESSING MOTIONS TO DISMISS

21        Before this Court are two motions to dismiss plaintiff's first amended complaint for

22  failure to state a claim filed by Defendant Spot Investments, LLC ("Spot Investments") and

23  Defendant Spot Holdings, Inc. (formerly doing business as Spot Devices, Inc., referred to

24  herein as "Spot"), respectively.  The motions are fully briefed and submitted for decision.

25                              Facts

26        The first amended complaint includes approximately six pages of factual

27  allegations, which are summarized below.  The seven claims for relief that follow

28  incorporate these allegations by reference.

                                      1

1    Plaintiff Timm Peddie ("Mr. Peddie") was initially the sole shareholder of Spot.

2    Defendant John Pettibone ("Mr. Pettibone") is the vice president of finance for Defendant

3    Haws Corporation ("Haws"), which invested in Spot in 2004. First Am. Compl. 3:1-5. Mr.

4    Peddie's share holdings were reduced to 28%. The first amended complaint does not state

5    whether there were other investors. Mr. Pettibone became Spot's treasurer and secretary.

6    Spot Investments, of which Mr. Pettibone is a managing member, became a preferred

7    shareholder. Between 2004 and 2011, Mr. Peddie's share holdings were further reduced to

8    17%. See id. at 3:19-20. The number, identity, and holdings of Spot's shareholders are not

9    otherwise discussed.

10    Mr. Peddie remained on the five-member board of directors until sometime in 2012.

11    Id. at 2:27-28. Thomas Burnham was also a board member. Id. at 4:10. Al Burns held a

12    preferred shareholder board seat until May 2011, when Spot Investments replaced him

13    with Thomas White, the president of Haws. Id. at 3:4-10. Wade Wnuk had been

14    appointed to the board but was replaced by Dean McKay, a member of the board of

15    directors of Haws. Mr. McKay was also made Spot's chief executive officer.[1] Id. at 5:1-8.

16    Haws loaned $6.7 million to Spot, which conducted a "debt-equity conversion" in

17    2011 to satisfy the debt. Id. at 4:11-12. Spot issued 87 million shares at approximately

18    $0.077 per share. This increased the number of authorized shares from 36.7 million to

19    126.7 million. Id. at 7:7-11. The transaction was based on a business valuation conducted

20    by a third-party hired by Defendants. Spot was valued at approximately $1 million, and

21    the board of directors approved. See id. at 4:8-10. Mr. Peddie's primary basis for relief is

22    that Spot was undervalued. He estimates the company was worth approximately $25 to

23    $30 million. Id. at 3-4. He requested a 409A valuation be conducted before the board

24    approved the valuation and that the board's vote be postponed to allow for additional

25    financial information. His requests were ignored. Id. at 6:4-12. "After the revaluation, Mr.

26    Peddie held less than 2% of the stock." Id. at 3:20-21.

27    

28    [1] Spot Investments, as a preferred shareholder, was guaranteed authority to appoint three of the five Spot board members. First Am. Compl. 3:7-9. The identity of the fifth board member is not made known.

1       Mr. Peddie learned he was no longer a board member on October 31, 2012,

2   although he did not receive notice of a meeting or vote. Id. at 7:21-22. His various

3   requests to inspect corporate documents were denied. Id. at 3:23-27, 4:23-25, 5:12-18, 8:1-3.

4   "Haws/Pettibone/ SIL/Spot laid further claim to another $4.6 million in debt" at the end

5   of 2012. Id. at 5:16-18.

6                 On December 7, 2012, Mr. Peddie received a notice of sale

7                 from Spot to sell certain undefined assets to Carmanah
                  Technologies, and that Spot owed Haws $4.7MM, to which

8                 Haws/Pettibone/SIL/Spot took all remaining assets from

9                 Spot to Cirrus [Systems, LLC], allowing any shareholder to
                  purchase non-Carmanah assets for the $4.7MM.

10

11  Id. at 7:23-27. Mr. Peddie inquired about payment for his shares in May 2013. He was

12  never paid. Id. at 8:4-9.

13                         Procedural History

14      Mr. Peddie filed a complaint against Spot, Haws, Mr. Pettibone, and Spot

15  Investments on July 2, 2013. Spot filed a Chapter 7 bankruptcy petition on August 29,

16  2013. Five of Mr. Peddie's claims for relief—breach of fiduciary duty, constructive fraud,

17  aiding and abetting breach of fiduciary duty, interference with prospective economic

18  advantage, and unjust enrichment—were stayed as claims involving harm to Spot such

19  that the bankruptcy trustee could assert them. The two remaining claims based on

20  dissenter's rights—declaratory and injunctive relief—proceeded against the non-debtors.

21      Spot Investments filed a motion to dismiss for failure to state a claim on February 4,

22  2014. This Court issued an order on March 26, 2014, granting Mr. Peddie leave to amend.

23  Mr. Peddie filed a first amended complaint on April 15, 2014. See id. 3:2-21. He thereafter

24  sought termination of the automatic stay before the bankruptcy court, and the stay was

25  lifted.

26      Spot Investments filed a motion to dismiss plaintiff's first amended complaint, with

27  prejudice, on May 2, 2014. It argues 1) the claims this Court previously stayed as property

28  of Spot's bankruptcy estate should now be dismissed as derivative claims; 2) claims based
    on breach of fiduciary duty should be dismissed against Spot Investments because it is

1  only a preferred shareholder; 3) the facts set forth in the first amended complaint fail to

2  support an alter ego claim against Spot Investments; and 4) Mr. Peddie fails to allege facts

3  that if true would entitle him to payment for his shares under the dissenter's rights statute.

4  Spot filed a motion to dismiss on May 5, 2014, arguing 1) the claims this Court previously

5  stayed as property of Spot's bankruptcy should now be dismissed as derivative claims;

6  and 2) Mr. Peddie fails to plead facts that if true would entitle him to payment for his

7  shares under the dissenter's rights statute.

8      Mr. Peddie argues in opposition that his first amended complaint alleges the

9  occurrence of four of the six corporate actions that trigger a shareholder's right to dissent

10  and receive payment.  He argues he suffered harm unique and individual to him and thus

11  he has individual claims.  He argues the first amended complaint properly alleges Spot

12  Investments was an alter ego and owed fiduciary duties to Mr. Peddie.  He requests this

13  Court grant him leave to amend or, in the alternative, NRCP 65(f) discovery.

14                                    Analysis

15      Pursuant to NRCP 8, "[a] pleading which sets forth a claim for relief . . . shall

16  contain (1) a short and plain statement of the claim showing that the pleader is entitled to

17  relief, and (2) a demand for judgment for the relief the pleader seeks."  The complaint

18  must set forth sufficient facts to demonstrate the necessary elements of the claims and

19  support the legal theories upon which they are based so defendants have adequate notice.

20  Western States Constr. v. Michoff, 108 Nev. 931, 936, 840 P.2d 1220, 1223 (1992); Liston v.

21  Las Vegas Metro. Police Dep't, 111 Nev. 1575, 1578, 908 P.2d 720, 723 (1995).

22      Pursuant to NRCP 12(b)(5), "[t]o survive dismissal, a complaint must contain some

23  set of facts, which, if true, would entitle the plaintiff to relief."  In re Amerco Derivative

24  Litigation, 127 Nev. ___, ___, 252 P.3d 681, 691 (2011).  The court's task is to "determine

25  whether or not the challenged pleadings set forth allegations sufficient to make out the

26  elements of a right to relief."  Edgar v. Wagner, 101 Nev. 226, 227, 699 P.2d 110, 111 (1985).

27  The allegations in the complaint "must be taken at 'face value' and must be construed

28  favorably in the plaintiff's behalf."  Id. at 227-28, 699 P.2d at 111-12.

1    The complaint should not be dismissed unless it appears certain plaintiff could

2  prove no set of facts that would warrant relief.  Leave to amend rather than dismissal is

3  the preferred remedy if the complaint can be amended to state a claim.  Cohen v. Mirage

4  Resorts, Inc., 119 Nev. 1, 22, 62 P.3d 720, 734 (2003).

5    **I.  Mr. Peddie's Factual Allegations Describe What Was Possibly a De Facto Merger,**
         **and Leave to Amend is Appropriate.**
6

7    A shareholder may dissent to the following corporate actions in order to receive the

8  fair value of his or her shares:

9         (a) Consummation of a plan of merger to which the
              domestic corporation is a constituent entity:
10                . . . .

11        (b) Consummation of a plan of conversion to which the
              domestic corporation is a constituent entity as the
12            corporation whose subject owner's interests will be
              converted.
13

14        (c) Consummation of a plan of exchange to which the
              domestic corporation is a constituent entity as the
15            corporation whose subject owner's interests will be
              acquired, if the stockholder's shares are to be acquired in
16            the plan of exchange.

17        (d) Any corporate action taken pursuant to a vote of the
              stockholders to the extent that the articles of
18            incorporation, bylaws or a resolution of the board of
              directors provides that the voting or nonvoting
19            stockholders are entitled to dissent and obtain payment
              for their shares.
20

21        (e) Accordance of full voting rights to control shares, as
              defined in NRS 78.3784, only to the extent provided for
22            pursuant to NRS 78.3793.

23        (f) Any corporate action not described in this subsection that
              will result in the stockholder receiving money or scrip
24            instead of a fraction of a share except where the
              stockholder would not be entitled to receive such
25            payment pursuant to NRS 78.205, 78.2055, or 78.207.

26

27  NRS 92A.380(1). Spot and Spot Investments argue Mr. Peddie fails to plead occurrence of

    any corporate action that would entitle him to dissent and demand payment. Mr. Peddie
28
    concedes the corporate actions described at NRS 92A.380(1)(e) and (f) did not occur. Opp.

1  to Spot Mot. 12:6-8 (May 22, 2014).  This Court finds his factual allegations do not describe

2  a conversion, exchange, or governing documents that provide for dissenter's rights.

3      *a. Merger*

4      Mr. Peddie cites to allegations in the first amended complaint regarding sale of

5  Spot's assets to other entities, arguing "[t]he allegations described a merger as Haws sold

6  certain Spot assets, took assets unto itself and then merged the remaining assets into

7  Cirrus (another Haws owned entity)."  Opp. to Spot Mot. 6:13-24.

8      A merger occurs when "one or more domestic entities . . . merge into another entity

9  if the plan of merger is approved."  NRS 92A.100(1).  "A 'de facto merger' occurs when

10  one corporation is absorbed by another without complying with the necessary

11  formalities."  19 C.J.S. Corporations § 893 (2014).  The Nevada Supreme Court has

12  recognized a sale of corporate assets may constitute a de facto merger, although the

13  doctrine has only been applied in the context of successor liability.  Lamb v. Leroy Corp.,

14  85 Nev. "The de facto merger exception permits courts to hold the purchaser of a

15  business's assets liable for the seller corporation's conduct when the parties have

16  essentially achieved the result of a merger."  Village Builders 96 v. U.S. Laboratories, 121

17  Nev. 261, 268-69, 112 P.3d 1082, 1087 (2005).  Courts consider "(1) whether there is a

18  continuation of the enterprise,[2] (2) whether there is a continuity of shareholders, (3)

19  whether the seller corporation ceased its ordinary business operations, and (4) whether the

20  purchasing corporation assumed the seller's obligations."  Id. at 269, 112 P.3d at 1087.

21      This Court must draw every fair intendment in Mr. Peddie's favor.  Taking his

22  allegations as true, Cirrus absorbed Spot and Defendants circumvented obligations to

23  dissenting shareholders.  However, the allegations do not speak to some of the de facto

24  merger factors listed above.  Mr. Peddie does not state whether Spot shareholders became

25  Cirrus shareholders; whether Spot employees became Cirrus employees; what type of

26  _____

27  [2] "To determine whether there is a continuation of the enterprise, courts generally look to whether there is a
continuity of management, personnel, physical location, assets and general business operations between the

28  purchaser and seller."  Village Builders, 121 Nev. at 270, 112 P.3d at 1088 (internal quotation marks omitted)
(quoting Kleen Laundry & Dry Cleaning v. Total Waste Mgt., 817 F.Supp. 225, 230 (D.N.H. 1993)).

6

1   business Cirrus engages in and whether it has continued Spot's business in Spot's location;

2   whether Spot ceased operation after the sale; or whether Cirrus assumed Spot's liabilities.

3   Without ever using the word "merger" or explicitly alleging a de facto merger occurred,

4   the allegations are insufficient to give adequate notice to Defendants of the basis for the

5   claim or state a claim for dissenter's rights based upon a merger.

6        It is not certain Mr. Peddie could prove no set of facts warranting relief. He is

7   therefore granted leave to amend.

8        b.  *Piercing the Corporate Veil*

9        It is the corporation that is liable to a dissenting shareholder for the value of that

10  shareholder's shares.  NRS 92A.460(1).  However, a plaintiff can pierce the corporate veil

11  and pursue insiders to satisfy a corporation's debt.  "[T]he 'essence' of the alter ego

12  doctrine is to 'do justice' whenever it appears that the protections provided by the

13  corporate form are being abused."  LFC Marketing Group, Inc. v. Loomis, 116 Nev. 896,

14  902-03, 8 P.3d 841, 845-46 (2000).  A plaintiff must prove three elements by a

15  preponderance of the evidence:

16           (1) The corporation must be influenced and governed by the
             person asserted to be its alter ego[;] (2) There must be such
17           unity of interest and ownership that one is inseparable from
             the other; and (3) The facts must be such that adherence to
18           the fiction of separate entity would, under the
             circumstances, sanction a fraud or promote injustice.
19

20  Ecklund v. Nevada Wholesale Lumber Co., 93 Nev. 196, 197, 562 P.2d 479, 479-80 (1977)

21  (quoting Frank McCleary Cattle Co. v. Sewell, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957));

22  see also NRS 78.747.  "To recover on an alter ego theory, a plaintiff need not use the words

23  'alter ego,' but must allege sufficient facts to show a unity of interest and ownership, and

24  an unjust result if the corporation is treated as the sole actor."  Leek v. Cooper, 194

25  Cal.App.4th 399, 415 (Cal. Ct. App. 2011).

26       Spot Investments argues the dissenter's rights claims against it must fail because

27  Mr. Peddie has not pled sufficient facts to establish alter ego liability.  However, Mr.

28  Peddie's first amended complaint addresses the elements of an alter ego claim.  Mr. Peddie

1   alleges "SIL was created by Haws and Pettibone to be used as an alter ego in controlling

2   Spot." First Am. Compl. 3:2-3. He alleges Spot Investments was a preferred shareholder

3   with authority to appoint a majority of the board of directors. He alleges Spot Investments

4   "controlled and directed the Spot revaluation," id. at 3:11-12, funneled money and

5   investments to Spot, and controlled Spot to the detriment of Spot and Mr. Peddie, id. at

6   3:15-19. If true, Mr. Peddie's factual allegations show influence, unity of interest and

7   ownership, and that fraud could result if the corporate fiction is upheld.

8       **II.  It Is Not Certain Mr. Peddie Cannot Plead Additional Facts to State Individual**

9           **Claims Based on Breach of Fiduciary Duty.**

10         *a.  Individual vs. Derivative Claims*

11       This Court previously stayed five claims that involved harm to Spot and thus

12   belonged, in some part, to the bankruptcy estate. Spot and Spot Investments argue these

13   claims should now be dismissed as derivative claims that cannot be brought by Mr. Peddie

14   individually. Mr. Peddie argues in response that his first amended complaint sufficiently

15   alleges "unique and individual harm that no other shareholder, individual or entity has

16   suffered." Opp. to Spot Investments Mot. 3:5-11 (May 19, 2014).

17       Mr. Peddie alleges in his first claim for breach of fiduciary duty that

18           Mr. Peddie's injuries and damages are unique to him and

19           distinct from the injuries sustained by other shareholders of

        Spot or Spot as a corporation. Mr. Peddie was not provided

20           with the same opportunities as Haws/Pettibone/SIL/Spot

21           in the financing from Haws/SIL and the revaluation related

        thereto. This resulted in the disproportionate transfer of

22           economic value and voting power to Haws/Pettibone/

23           SIL/Spot and unique and individual harm to Mr. Peddie

        through a disproportionate dilution of his ownership

24           interests and voting rights in Spot.

25   First Am. Compl. 11:12-20. He includes similar language in his second claim for

26   constructive fraud, id. at 12:11-20, and fourth claim for aiding and abetting the breach of

27   fiduciary duty, id. at 15:20-28.

28   / / /

1   Equity dilution claims are generally considered derivative claims. Feldman v.

2   Cutaia, 951 A.2d 727, 732 (Del. 2008). "[A]ny dilution in value of the corporation's stock is

3   merely the unavoidable result . . . of the reduction in value of the entire corporate entity, of

4   which each share of equity represents an equal fraction." Gentile v. Rossette, 906 A.2d 91,

5   99 (Del. 2006). However, where a controlling shareholder issues excessive shares to itself

6   for artificially low value and thereby decreases the minority's ownership interest, the

7   minority shareholders suffer a loss. "Because the shares representing the 'overpayment'

8   embody both economic value and voting power, the end result of this type of transaction

9   is an improper transfer—or expropriation—of economic value and voting power from the

10  public shareholders to the majority or controlling stockholder." Id. at 100. The

11  corporation has a claim, and the minority shareholders may also have a separate,

12  individual claim for the loss of value and voting power. Id. at 99-100.

13   Nevada has not addressed this exact issue, but Cohen v. Mirage Resorts, Inc., 119

14  Nev. 1, 62 P.3d 720 (2003), is informative. In Cohen, the Nevada Supreme Court allowed a

15  class action lawsuit brought by individual minority shareholders for breach of fiduciary

16  duty against the corporation's board of directors and majority shareholders based on an

17  illegal merger. The plaintiff alleged insiders were offered special benefits to approve the

18  merger at an artificially low price. The Court held the claims were not derivative,

19  reasoning, in part, that "[t]he shareholder has lost unique personal property—his or her

20  interest in a specific corporation." Id. at 19, 62 P.3d at 723. Taking the factual allegations

21  set forth in the first amended complaint as true, Mr. Peddie lost his interest in Spot.

22   In order to plead individual claims, Mr. Peddie must allege the existence of a

23  controlling shareholder or control group. "[A]ny other interpretation would swallow the

24  general rule that equity dilution claims are solely derivative." Feldman v. Cutaia, 956

25  A.2d 644, 657 (Del. Ch. 2007), aff'd, 951 A.2d 727 (Del. 2008). A controlling shareholder is

26  one who owns more than 50% of the voting power or exercises control over the business

27  and affairs of the corporation. Id. at 657. "The expropriation principle operates only when

28  defendant fiduciaries (i) had the ability to use the levers of corporate control to benefit

1  themselves and (ii) took advantage of that opportunity." Carsanaro v. Bloodhound

2  Technologies, Inc., 65 A.3d 618, 658-59 (Del. Ch. 2013).  Although Mr. Peddie has alleged

3  affiliation and common ownership between Haws, Mr. Pettibone, and Spot Investments,

4  the share holdings of the Defendants at the time of the 2011 debt-equity conversion are not

5  stated.  The first amended complaint describes appointment by Spot Investments of only

6  two of the five directors.  "Standing will not exist . . . . when a majority of disinterested

7  and independent directors approves the terms."  Id.  Mr. Peddie has not alleged the

8  existence of a controlling shareholder or group at the time of the 2011 debt-equity

9  conversion, but it is not certain he cannot plead such facts.  Accordingly, leave to amend is

10  appropriate.

11       b.  *Spot Investments' Fiduciary Duties*

12       Spot Investments is a preferred shareholder.  First Am. Compl. 3:7-10.  It argues it

13  owed no fiduciary duties to Mr. Peddie because it was neither an officer or director.  Spot

14  Investments Mot. 6:17-22.  In response, Mr. Peddie cites to various portions of his first

15  amended complaint where he alleges Spot Investments was an investor, director, officer,

16  preferred shareholder, and entity in which he reposed trust and confidence.  Opp. to Spot

17  Investments Mot. 2:5-25.  Only natural persons can serve as officers and directors, and thus

18  Spot Investments is neither of these things.  See NRS 78.115; NRS 78.130(3).  Mr. Peddie

19  has cited no authority under which an investor or preferred shareholder owes fiduciary

20  obligations to other shareholders.[3]

21       In Cohen, however, the Nevada Supreme Court allowed minority shareholders to

22  bring individual claims against majority shareholders for breach of fiduciary duty where

23  the minority suffered individual harm and had individual claims.  See 119 Nev. at 11-12,

24

25  [3] The preferential rights of preferred stock relate to negotiated preferences and are evaluated as contract
rights.  See Jedwab v. MGM Grand Hotels, Inc., 509 A.2d 584, 594 n.6 (Del. Ch. 1986).  "'[G]enerally it will be

26  the duty of the board, where discretionary judgment is to be exercised, to prefer the interests of the common
stock—as the good faith judgment of the board sees them to be—to the interests created by the special rights,

27  preferences, *etc* . . . . of preferred stock.'"  In re Trados Inc. Shareholder Litigation, 73 A.3d 17, 41 (Del. Ch.
2013) (quoting Equity-Linked Investors, L.P. v. Adams, 705 A.2d 1040, 1042 (Del. Ch. 1997)).  Mr. Peddie cites

28  to no case or statute that supports the proposition that preferred shareholders have a fiduciary duty to prefer
the interests of common shareholders where their interests diverge.  See Opp. to Spot Investments Mot. 2:14-
16 (May 19, 2014).

1  62 P.3d at 727 ("Challenges to the validity of a merger . . . . can involve allegations that

2  majority shareholders breached their limited fiduciary duties to minority shareholders.").

3  This Court will not dismiss the breach of fiduciary duty and constructive fraud claims

4  against Spot Investments without granting Mr. Peddie the opportunity to present

5  additional details regarding Spot Investments in an amended pleading.

6      Spot Investments also argues Mr. Peddie fails to plead facts constituting fraud with

7  sufficient particularity.  Pursuant to NRCP 9(b), "the circumstances constituting fraud or

8  mistake shall be stated with particularity."  A plaintiff must detail the time, place, identity

9  of the parties involved, and the nature of the fraud.  Brown v. Kellar, 97 Nev. 582, 583-84,

10  636 P.2d 874, 874 (1981).  A breach of fiduciary duty is analogous to fraud, and the

11  requirements of NRCP 9(b) apply to breach of fiduciary duty claims.  In re Amerco

12  Derivative Litigation, 127 Nev. ___, ___, 252 P.3d 681, 702-03 (2011).  Mr. Peddie lists with

13  some specificity in his claim for breach of fiduciary duty the actions and inactions he

14  believes constitute the breach.  See First Am. Compl. 9-10.  The constructive fraud and

15  aiding and abetting claims incorporate this list by reference.  In combination with the

16  extensive factual allegations, Mr. Peddie has been sufficiently particular.

17  **III. The Claims for Interference with Prospective Economic Advantage and Unjust**
18  **Enrichment are Dismissed as Derivative Claims.**

19      By his interference with prospective economic advantage claim, Mr. Peddie alleges

20  Spot had prospective business relationships that were interfered when Defendants sold

21  Spot's assets to interested parties for less than fair value.  First Am. Compl. 16:18-26.

22  These assets belonged to Spot, not Mr. Peddie, and there is no harm to Mr. Peddie other

23  than that resulting from loss of value to Spot.  In his motion for leave to file motion for

24  reconsideration, Mr. Peddie conceded "[t]he Interference with Prospective Economic

25  Advantage Claim [sic] and the instances where Haws illegally transferred certain Spot

26  assets without getting fair value in return, those are claims that belong to Spot . . . ."  Mot.

27  for Leave 6:17-21 (Mar. 26, 2014).

28  / / /

1       In his claim for unjust enrichment, Mr. Peddie alleges Defendants "received, and

2  they retain, money and property of Mr. Peddie, which in equity and good conscience

3  should be returned." First Am. Compl. 17:16-17. He does not describe what money and

4  property this was. Where equity dilution is involved, minority shareholders have a claim

5  based on breach of fiduciary duty. See Cohen, 119 Nev. at 11, 62 P.3d at 727; Gentile, 906

6  A.2d at 100. Thus, Mr. Peddie may individually bring claims for breach of fiduciary duty,

7  constructive fraud, and aiding and abetting breach of fiduciary duty to seek relief for the

8  wrongful dilution of his ownership interest in Spot. However, the interference with

9  prospective economic advantage and unjust enrichment claims do not appear to be based

10  on equity dilution and seek to remedy harms incurred by Spot. Accordingly, these claims

11  are dismissed as derivative claims.

Conclusion

12

13       The fifth claim for interference with prospective economic advantage and the sixth

14  claim for unjust enrichment are dismissed. This Court has not treated either motion to

15  dismiss as a summary judgment motion, and NRCP 56(f) discovery is not appropriate.

16  Mr. Peddie may amend his first amended complaint to address a possible de facto merger.

17  He may also allege additional facts regarding the existence of controlling shareholders in

18  order to state individual breach of fiduciary duty and fraud claims. If Spot Investments

19  owed fiduciary duties to Mr. Peddie, Mr. Peddie must identify a legitimate legal basis and

20  clearly allege facts that establish this.

21  **IT IS SO ORDERED.**

22  Dated: July ___, 2014.
           August

23

24  David A. Hardy
    District Court Judge

25

26

27

28

12

<u>**CERTIFICATE OF SERVICE**</u>

1
2    I certify that I am an employee of the Second Judicial District Court of the State of
3  Nevada, in and for the County of Washoe; that on the 4th day of August, 2014, I
4  electronically filed the foregoing with the Clerk of the Court system which will send a
5  notice of electronic filing to the following:
6    ANGELA M. BADER, ESQ. for SPOT INVESTMENTS, LLC, SPOT DEVICES,
7  INC., ROBERT A. DOTSON, ESQ. for SPOT INVESTMENTS, LLC, SPOT DEVICES, INC.
8    TAMARA REID, ESQ. for JOHN PETTIBONE, HAWS CORPORATION
9    J. ROBERT SMITH, ESQ. for JOHN PETTIBONE, HAWS CORPORATION
10    ADAM P. MCMILLEN, ESQ. for TIMM PEDDIE
11    Further, I certify that I deposited in the county mailing system for postage and
12  mailing with the U.S. Postal Service in Reno, Nevada, a true copy of the foregoing
13  addressed to:
14    N/A
15
16                     Department 15 Judicial Assistant
17
18
19
20
21
22
23
24
25
26
27
28

PRO: «pro_rec_num»